Robert P. LoBue
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
Telephone:  (212) 336-2000
Fax:  (212) 336-2222
rplobue@pbwt.com

*Attorneys for Dow Jones & Company, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DOW JONES & COMPANY, INC., | : |
| Plaintiff, | Case No. 22-cv-_____ |
| | : |
| - against - | : |
| SYNOVUS FINANCIAL CORP. and SYNOVUS BANK, | : **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| | : |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Dow Jones & Company, Inc. ("Dow Jones" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint against Defendants Synovus Financial Corp. and Synovus Bank (collectively "Synovus" or "Defendants") alleges as follows:

### INTRODUCTION

1. This is an action for infringement of copyright under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and alternatively for breach of contract.

2. Dow Jones has a long and distinguished history of reporting news and business information.  Dow Jones dedicates considerable resources to investigating, reporting,

13582487

and publishing news in a timely manner to millions of paying subscribers and other readers around the world, particularly through its flagship publication, *The Wall Street Journal*.

3. Dow Jones is reliant on copyright protection for its very existence. Dow Jones maintains a worldwide network of news bureaus and highly skilled professional journalists to provide its clients and subscribers with access to high quality news reporting wherever it happens, together with incisive commentary. Without control over the distribution of its content, Dow Jones would be unable to maintain this network, which requires substantial time and money.

4. With only a few carefully chosen exceptions, Dow Jones serves as the exclusive distributor of its original news content and only authorizes a small number of select third parties to distribute that content for a fee commensurate with its value. Dow Jones's vigilant oversight of the channels by which its content is distributed adds significant value to Dow Jones's products and services, which in turn supports Dow Jones's continuing ability to investigate, report, and publish the news with a high level of excellence.

5. Unauthorized republication of Dow Jones's copyrighted content undermines this business model and injures Dow Jones. Synovus's infringement interferes with Dow Jones's control of the dissemination of its content and reduces the value of that content to legitimate licensees and individual consumers. Synovus has engaged in such unauthorized republication with respect to numerous articles from *The Wall Street Journal*. Synovus is (and at all relevant times, has been) well aware that reproduction, display and redistribution of material published by Dow Jones is governed by U.S. copyright laws and requires a license.

6. Synovus entered into a corporate subscription agreement with Dow Jones dated September 25, 2017 (the "Corporate Subscription Agreement"). The Subscription

Agreement remains in effect. That agreement authorized a limited number of Synovus's employees to receive *The Wall Street Journal* electronically by registering an account and affirmatively agreeing to the "Subscriber Agreement and Terms of Use" found on the website *wsj.com* (the "Online Terms of Use").

7. In December 2021, a pseudonymous whistleblower informed Dow Jones that a Synovus executive named Alison Dowe was distributing daily email newsletters that regularly included full-text articles from *The Wall Street Journal* as well as other major publications, and that she disseminated this material to some 200 Synovus executives. The whistleblower stated that Synovus engaged in this routine misuse of Dow Jones's copyrighted articles despite being warned that dissemination of the newsletters was in excess of any license granted by subscription contracts held by Synovus. The information provided by the whistleblower indicates that, by continuing to distribute the newsletters even after being warned internally that it lacked the proper license rights, Synovus has willfully infringed Dow Jones's copyrights in and to each such article distributed.

8. Dow Jones seeks injunctive relief to halt Defendants' pattern of copyright infringement and breach of contract, actual or statutory damages to compensate for the injury Dow Jones has suffered as a result of Defendants' willful and unlawful conduct, attorney's fees, and costs of suit.

## THE PARTIES

9. Plaintiff Dow Jones is a Delaware corporation with its principal place of business located at 1211 Avenue of the Americas, New York, New York.

10. Upon information and belief, Defendant Synovus Financial Corp. is a Georgia corporation with its principal place of business located at 1111 Bay Avenue, Columbus,

Georgia. Its wholly-owned subsidiary Defendant Synovus Bank is a Georgia state-chartered bank also headquartered in Columbus, Georgia.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1338(a) (action arising under an Act of Congress relating to copyrights), 1331 (action arising under the laws of the United States), 1332 (diversity of citizenship), and 1367 (supplemental jurisdiction).

12. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), (c), and (d), and 28 U.S.C. § 1400(a), because a substantial part of the events or omissions giving rise to Dow Jones's claims occurred in this district; because Synovus is subject to personal jurisdiction in this district; and because Synovus consented to suit in this district pursuant to the Online Terms of Use.

## BACKGROUND

A.  **The Business of Dow Jones**

13. In 1882, Charles Dow, Edward Jones and Charles Bergstresser founded the company that would eventually be known as Dow Jones & Company, Inc. Dow Jones currently employs one of the world's largest teams of journalists and has long been a worldwide leader in financial journalism through its many highly respected publications.

14. Dow Jones's flagship publication is *The Wall Street Journal*. Founded in 1889, *The Wall Street Journal* is one of the largest national daily newspapers in the United States, with a circulation of approximately three million readers. Dow Jones sells the daily print edition of *The Wall Street Journal* on an individual-copy basis (e.g., at newsstands), as well as on a subscription basis.

15. *The Wall Street Journal*'s online presence, the website *wsj.com*, has one of the largest paid subscriber bases of any news site on the Internet.

16. Dow Jones also licenses reprint rights to *The Wall Street Journal* content on a per-article basis. As a result, each of the dozens of articles, opinion columns and other original items that appear in *The Wall Street Journal* each day has its own independent economic value. Among the types of reprint licenses that Dow Jones offers is a license to redistribute individual articles from the *Journal* by email. The pricing is dependent on the number of recipients and the duration of the license.

**B.      Synovus and *The Wall Street Journal* Subscription**

17. Synovus is a financial services company based in Columbus, Georgia. It operates a network of bank branches in Georgia, Alabama, South Carolina, Florida and Tennessee under the name Synovus Bank.

18. On September 25, 2017 Synovus entered into the Corporate Subscription Agreement, which is annexed hereto as Exhibit A. The Corporate Subscription Agreement authorizes a stated number of individual users who are employees of Synovus to receive *The Wall Street Journal* by registering an account at *wsj.com* and agreeing to the Online Terms of Use available at that site. The current version of the Online Terms of Use is annexed hereto as Exhibit B and is readily available online.[1] Accordingly, Synovus bound itself contractually to the terms, including limitations on usage, found in both the Corporate Subscription Agreement and the Online Terms of Use.

19. The Corporate Subscription Agreement defines Synovus as the "Customer" and reflects Synovus's subscription to "Services" defined as *The Wall Street Journal*

---

[1] WSJ.com Subscriber Agreement and Terms of Use, available at http://online.wsj.com/public/page/subscriber_agreement.html.

Digital and "Combo" (digital and print) editions. The agreement limits use of *Journal* content as follows in section 1 of the "Terms and Conditions of Order":

> Only Customer's own employees . . . are authorized to have access to the Service. Customer's access to a Service hereunder does not constitute authorization for the Customer to copy stories or other content from the Service and then publish such content on Customer's public website, intranet, newsletters or in any other form.

20. The Corporate Subscription Agreement initially authorized 39 users of the Digital edition and 7 users of the Combo package. In section 4.2, the digital users were required to access their subscriptions through the *wsj.com* website:

> Authorized Users . . . will be required to create an account by entering their user details, creating a password and accepting the terms of the applicable Services subscription agreement (the 'Online Subscription Agreement') prior to accessing the Service for the first time.

21. As contemplated by section 4.2, several employees of Synovus opened accounts on *wsj.com* and necessarily agreed to the online subscription agreement (referred to herein as the "Online Terms of Use") set forth therein.

22. The Online Terms of Use contain several restrictions on the use that recipients are permitted to make of the *Journal* content. For example, section 8.2 provides:

> Unless you have our written consent, you may not use, sell, publish, distribute, retransmit or otherwise provide access to the Content received through the Services to anyone, including, if applicable, your fellow students or employees, [with exceptions not applicable here].

23. Section 8.3.1 of the Online Terms of Use further specifies:

> You agree not to rearrange or modify the Content available through a Service. You agree not to display, post, frame, or scrape the Content for use on another website, app, blog, product or service, except as otherwise expressly permitted by this Agreement.

24. The Online Terms of Use include an express agreement in section 15 that any dispute involving intellectual property arising under the agreement or otherwise relating to

6

13582487

the relationship between the parties shall be brought in the federal or state courts in the County of New York, State of New York.

**C.     Defendants' Infringing Conduct**

25.     On December 1, 2021, Dow Jones received an unsolicited email from a pseudonymous whistleblower purporting to have inside knowledge of Synovus's communications practices. The email stated:

> I am writing to make you aware that Synovus Bank has a daily email news service for approximately 200 executives that regularly includes the full content of stories by Wall Street Journal/Dow Jones, American Banker, Bloomberg, S&P and many other publications. While Synovus has at least one subscription for your publication, I know that does not cover widespread internal distribution or sharing of copyrighted content. I am writing from a dummy email address because I work for the company and its executives have refused my strong suggestions to purchase more subscriptions or at least obtain a Copyright Clearance license. This has been going on for at least three years, maybe longer. I thought you would like to know. The executive who distributes these clips is Alison Dowe. Her contact details are on the Synovus website.

26.     According to the Synovus website, Ms. Dowe is Executive Vice President, Chief Communications and Corporate Responsibility Officer of Synovus. Synovus states that Ms. Dowe

> has overall responsibility for Synovus' image, reputation, and culture through internal and external communications; media relations; community investment, volunteerism and philanthropy; and the company's corporate social responsibility (CSR) and environmental, social, and governance (ESG) programs. . . .
>
> Her responsibility over the company's ESG program includes the coordination of actions and disclosures that demonstrate the company's commitment to being a trusted corporate citizen.

27.     According to the whistleblower, executives of Synovus were warned by their own employee that the distribution of news content from various publishers without permission was improper and that Synovus should obtain a proper license for this activity, but Synovus's leadership ignored the warning and declined to obtain an appropriate license. Given

this warning, and also given Ms. Dowe's stewardship of corporate responsibility as well as her previous experience as a journalist, Synovus must have known that its practice of republishing news articles without a proper license was an act of willful copyright infringement.

### D.    Dow Jones's Registered Copyrights

28.    Dow Jones registers on a regular basis each daily print edition of *The Wall Street Journal* within 90 days of first publication thereof. The content of these editions also generally appears in the online *Journal* at *wsj.com*. For the period 2019-2021, Dow Jones possesses certificates of copyright registration reflecting its ownership of copyright in and to the contents of the *Journal* as follows:

| Registration | Publication |
|---|---|
| TX 8-733-871 | *The Wall Street Journal*, January 2019 (Eastern ed.) |
| TX 8-733-892 | *The Wall Street Journal*, February 2019 (Eastern ed.) |
| TX 8-733-894 | *The Wall Street Journal*, March 2019 (Eastern ed.) |
| TX 8-733-896 | *The Wall Street Journal*, April 2019 (Eastern ed.) |
| TX 8-733-764 | *The Wall Street Journal*, May 2019 (Eastern ed.) |
| TX 8-801-928 | *The Wall Street Journal*, June 2019 (Eastern ed.) |
| TX 8-806-104 | *The Wall Street Journal*, July 2019 (Eastern ed.) |
| TX 8-804-085 | *The Wall Street Journal*, August 2019 (Eastern ed.) |
| TX 8-821-692 | *The Wall Street Journal*, September 2019 (Eastern ed.) |
| TX 8-825-743 | *The Wall Street Journal*, October 2019 (Eastern ed.) |
| TX 8-828-693 | *The Wall Street Journal*, November 2019 (Eastern ed.) |
| TX 8-832-446 | *The Wall Street Journal*, December 2019 (Eastern ed.) |
| TX 8-861-412 | *The Wall Street Journal*, January 2020 (Eastern ed.) |
| TX 8-861-444 | *The Wall Street Journal*, February 2020 (Eastern ed.) |
| TX 8-865-172 | *The Wall Street Journal*, March 2020 (Eastern ed.) |
| TX 8-876-066 | *The Wall Street Journal*, April 2020 (Eastern ed.) |
| TX 8-884-860 | *The Wall Street Journal*, May 2020 (Eastern ed.) |
| TX 8-887-049 | *The Wall Street Journal*, June 2020 (Eastern ed.) |
| TX 8-890-449 | *The Wall Street Journal*, July 2020 (Eastern ed.) |
| TX 8-905-967 | *The Wall Street Journal*, August 2020 (Eastern ed.) |
| TX 8-909-398 | *The Wall Street Journal*, September 2020 (Eastern ed.) |
| TX 8-917-986 | *The Wall Street Journal*, October 2020 (Eastern ed.) |
| TX 8-923-064 | *The Wall Street Journal*, November 2020 (Eastern ed.) |
| TX 8-931-099 | *The Wall Street Journal*, December 2020 (Eastern ed.) |
| TX 8-939-452 | *The Wall Street Journal*, January 2021 (Eastern ed.) |
| TX 8-950-348 | *The Wall Street Journal*, February 2021 (Eastern ed.) |
| TX 8-960-365 | *The Wall Street Journal*, March 2021 (Eastern ed.) |
| TX 8-969-760 | *The Wall Street Journal*, April 2021 (Eastern ed.) |
| TX 8-982-488 | *The Wall Street Journal*, May 2021 (Eastern ed.) |

| | |
|---|---|
| TX 8-994-124 | *The Wall Street Journal*, June 2021 (Eastern ed.) |
| TX 9-005-284 | *The Wall Street Journal*, July 2021 (Eastern ed.) |
| TX 9-028-948 | *The Wall Street Journal*, August 2021 (Eastern ed.) |
| TX 9-063-457 | *The Wall Street Journal*, September 2021 (Eastern ed.) |
| TX 9-075-551 | *The Wall Street Journal*, October 2021 (Eastern ed.)[2] |

29. The identity of the individual *Journal* articles that were copied and redistributed by Synovus is known only to Synovus at this time. Accordingly, Dow Jones cannot plead with certainty which of the listed registrations covers each article infringed by Synovus (the "Infringed Works"). Dow Jones expects that discovery will serve to identify the specific works infringed by Defendants, and once the identities of those works are known Dow Jones will be able to specify which of the listed registrations, or others, is applicable to each such infringement.

## FIRST CLAIM FOR RELIEF

**(Copyright Infringement)**

30. Dow Jones re-alleges and incorporates by reference paragraphs 1 through 29 of this Complaint.

31. Dow Jones is the sole proprietor of all right, title and interest in and to the copyrights of each of the Infringed Works. As provided by 17 U.S.C. § 106, Dow Jones has the exclusive right to, *inter alia*, reproduce, distribute, publicly display, and prepare derivative works from the Infringed Works.

32. Dow Jones has registered its claim to copyright in the Infringed Works.

33. Defendants have directly infringed Dow Jones's copyrights in the Infringed Works by unlawfully reproducing, transmitting, distributing, and creating derivative

---

[2] Applications for copyright registrations of editions of *The Wall Street Journal* first published after October 2021 are pending and, if relevant, Dow Jones reserves the right to assert them once received from the Copyright Office.

13582487

works based on, the Infringed Works, all in violation of Dow Jones's exclusive rights under 17 U.S.C. § 106 and in excess of any license granted to Defendants by Dow Jones.

34. Upon information and belief, the foregoing actions of Defendants in violation of Dow Jones's rights have been willful and intentional, executed with full knowledge of Dow Jones's exclusive rights in the Infringed Works, and in conscious disregard of those rights.

35. Dow Jones is entitled to recover from Defendants the profits that Defendants obtained through infringements of the Infringed Works as well as Dow Jones's damages from those infringements, or, at Dow Jones's election, statutory damages pursuant to 17 U.S.C. § 504 for each Infringed Work.

36. Dow Jones is also entitled to recover costs and attorney's fees from Defendants pursuant to 17 U.S.C. § 505.

37. Defendants' infringements of Dow Jones's copyrights have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Dow Jones not fully compensable in monetary damages. Dow Jones is therefore entitled to preliminary and permanent injunctions prohibiting Defendants from further infringing Dow Jones's copyrights.

## SECOND CLAIM FOR RELIEF

**(Breach of Contract)**

38. Dow Jones re-alleges and incorporates by reference paragraphs 1 through 29 of this Complaint.

39. The Corporate Subscription Agreement is a valid and enforceable contract between Dow Jones and Synovus, and was in effect during all times at which Synovus's infringing conduct occurred.

13582487

40. The Online Terms of Use is a valid and enforceable contract between Dow Jones and Synovus as well as the individual Synovus employees who gained access to *The Wall Street Journal* content as "Authorized Users," and was in effect during all times at which Synovus's infringing conduct occurred.

41. By reproducing and creating derivative works based on the Infringed Works, Synovus breached the express restrictions set forth in the Corporate Subscription Agreement and Online Terms of Use, quoted hereinabove, as to permissible uses of *The Wall Street Journal* content by subscribers.

42. By transmitting and distributing copies of articles from *The Wall Street Journal* to recipients not authorized by the Corporate Subscription Agreement to receive such copies, Synovus breached the express restrictions set forth in the Corporate Subscription Agreement.

43. Defendant's breach of contract has caused significant damage to Dow Jones, not all of which is readily calculable.

## PRAYER FOR RELIEF

WHEREFORE, Dow Jones demands judgment:

A. preliminarily and permanently restraining Defendants from (1) infringing Dow Jones's copyrights in articles published in *The Wall Street Journal* and other Dow Jones publications; and (2) committing further breaches of contract involving the publishing, reproduction, and distribution of Dow Jones's content, directly or indirectly, without the consent of Dow Jones;

  B. directing Defendants to delete all copyrighted content owned by Dow Jones from computers and websites under Defendants' control to the extent necessary to prevent further infringement by Defendants of the Infringed Works;

  C. awarding to Dow Jones its actual compensatory damages with respect to each cause of action in an amount to be determined at trial, or, if Dow Jones so elects, with respect to the First Claim for Relief, statutory damages in an amount to be determined at trial for each of the Infringed Works, in an amount not less than $750 and up to $30,000 for each work infringed, which may be increased to $150,000 per work infringed where, as here, the infringement is willful;

  D. requiring disgorgement to Dow Jones of the profits made by Defendants attributable to their unlawful conduct on all Claims for Relief to the extent not taken into account in computing Dow Jones's actual damages;

  E. with respect to the Second Claim for Relief, awarding punitive damages for Defendants' unlawful and wanton conduct;

  F. awarding Dow Jones its costs in this action, including reasonable attorney's fees;

  G. directing Defendants to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which it has complied with the Court's judgment; and

  H. awarding Dow Jones such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims asserted in its Complaint.

13582487

Dated: New York, New York
April 22, 2022

                                        Respectfully submitted,

                                        Robert P. LoBue

                                        */s/ Robert P. LoBue*
                                        Robert P. LoBue
                                        PATTERSON BELKNAP WEBB & TYLER LLP

                                        1133 Avenue of the Americas
                                        New York, NY  10036-6710
                                        Telephone:  (212) 336-2000
                                        Fax:  (212) 336-2222
                                        rplobue@pbwt.com

                                        *Attorneys for Dow Jones & Company, Inc.*

13582487

13582487